

Allegheny County
Valerie McDonald Roberts
Recorder of Deeds
Pittsburgh, PA 15219

Instrument Number: 2006-119367

Recorded On: October 25, 2006    As-Mortgage

Parties: ORLANDO JAMES A 2ND
To   FIFTH THIRD BANK WESTERN PA                                    # of Pages: 7

Comment:

**\*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\***

| | | |
|---|---|---|
| Mortgage | | 50.00 |
| | Pages > 4 | 2 |
| | Names > 4 | 0 |
| Total: | | 50.00 |

*I hereby certify that the within and foregoing was recorded in the Recorder's Office in Allegheny County, PA*

**\*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\***

**File Information:**

Document Number: 2006-119367
Receipt Number: 788040
Recorded Date/Time: October 25, 2006 01:45P
Book-Vol/Pg: BK-M  VL-32856  PG-321
User / Station: B Plake - Cash Station 25

**Record and Return To:**

FIRST AMERICAN TITLE INS LENDERS
1100 SUPERIOR AVE STE 200
CLEVELAND OH 44114



Valerie McDonald-Roberts Recorder of Deeds

(Space Above This Line for Recording Data)

# OPEN-END MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on August 18, 2006
The mortgagor is
JAMES A ORLANDO II AND NICOLE M ORDLANDO, HUSBAND AND WIFE

("Borrower"). This Security Instrument is given to FIFTH THIRD BANK(WESTERN PENNSYLVANIA
which is organized and existing under the laws of          OHIO         and whose address is
1850 EAST PARISGRAND RAPIDS, MI 49546                                    ("Lender").
Borrower owes Lender the principal sum of   Thirty Seven Thousand Six Hundred AND 00/100

Dollars (U.S. 37,600.00       ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on 08/18/26 .

TO SECURE to Lender (a) the repayment of the Indebtedness evidenced by the Loan Documents and any extensions or renewals
thereof, with interest thereon, the payment of all other funds, with interest thereon, advanced in accordance herewith to protect the
security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, or contained in the
Loan Documents or any document executed in connection therewith, and (b) the repayment of any and all other loans, advances or
indebtedness of Borrower owed to Lender and all affiliates of Lender, of any nature whatsoever (collectively the "Obligations") and
(c) the repayment of any future advances, with interest thereon, made to Borrower by Lender pursuant to Item 20 hereof (herein
"Future Advances"), Borrower does hereby mortgage, grant and convey to Lender, with mortgage covenants, the following
described property located in the County of ALLEGHENY              , State of PENNSYLVANIA          , to wit (herein,
the "Real Estate"):

SEE ATTACHED EXHIBIT "A"

which has the address of  1319 BARR AVENUE PITTSBURGH, PA15205-0000
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the Real Estate, and all easements, rights,
appurtenances, rents, royalties, mineral, oil and gas rights and profits, and all fixtures now or hereafter permanently attached to, the
Real Estate, and all right, title and interest of Borrower in and to the land lying in the streets and roads, in front of and adjoining
the Real Estate, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Real
Estate covered by this Mortgage; and all of the foregoing, together with said Real Estate (or the leasehold estate if this Mortgage is
on a leasehold) are herein referred to as the "Property".
BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage,
grant, and convey the Property, that the Property is unencumbered, and that Borrower will warrant and defend the title of the
Property against all claims and demands.

07201323                                                               Form 3036 9/90  (page 1 of 5)    PAM1 (04/04)

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and the interest on the Indebtedness evidenced by the Loan Documents, any extensions or renewals thereof, prepayment and late charges as provided in the Loan Documents, and the principal and interest on any Future Advances, Obligations or other sums secured by this Mortgage.

**2. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require or as may be required by applicable law (including flood insurance required by Item 25 hereof), and in such amounts and for such periods as Lender may require; provided, however, that Lender shall not require that the amount of such coverage exceed that amount of coverage required to pay the sums secured by this Mortgage unless required by applicable law.

The insurance carrier providing the insurance shall be chosen by Borrower, subject to approval by Lender, provided that such approval shall not be unreasonably withheld. Unless otherwise specified, all premiums on insurance policies shall be paid by Borrower making payment, when due, directly to the insurance carrier and providing receipt of said payment to Lender if requested by Lender.

All insurance policies and renewals thereof shall be in form acceptable to lender and shall include a standard mortgagee clause in favor of and in form acceptable to Lender and shall provide that the policies shall not be amended or canceled without thirty (30) days prior written notice to Lender. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Lender is hereby given full power to collect any insurance proceeds or to settle and compromise any insurance claims or bring suit to recover thereunder.

Lender is authorized to apply the net proceeds of any insurance claim, after deducting all costs of collection, including attorney's fees, at Lender's option, either to restoration or repair of the Property or to the sum secured by this Mortgage, and if, in the sole discretion of Lender, Lender is not satisfied with the adequacy of the collateral for the remaining indebtedness, Lender may without further notice or demand, elect to declare the whole of the remaining Indebtedness due and payable and may invoke any of the remedies afforded it by law, and/or by this Mortgage, including those permitted in Item 17 hereof.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any installment payments agreed to by Lender and Borrower, or change the amount of such installments. If, under Item 17 hereof, the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof, resulting form damage to the Property prior to the sale or acquisition, shall pass to Lender to the extent of the sum secured by this Mortgage, immediately prior to such sale or acquisition.

**3. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this security instrument, including Borrower's covenants to make payments when due. Borrower shall pay all taxes, liens, assessments and other charges, fines and impositions attributable to the Property, and leasehold payments or ground rents, if any, by Borrower making payment, when due, directly to the Payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and Borrower shall promptly furnish Lender receipts evidencing such payment.

**4. Application of Payments.** Unless otherwise agreed, all payments are to be applied in the following order: costs, expenses, attorney's fees, interest, escrow, late fees or penalties and then principal. In the event this mortgage secures more than one note or other debt instrument, at Lender's option, payments may be applied on any of the outstanding notes, or concurrently on more than one of the outstanding notes.

**5. Preservation and Maintenance of Property; Leasehold; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, and the by-laws and regulations of the condominium or planned unit development.

**6. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, foreclosure, code enforcements, deed restrictions and registrations, or arrangements or proceedings involving a bankrupt or decedent, Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs.

Any amounts disbursed by Lender pursuant to this Item 6, with interest thereon, shall become additional indebtedness with Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the applicable rate as prescribed in the Loan Documents evidencing the Indebtedness or the highest rate under applicable law. Nothing contained in this Item 6 shall require Lender to incur any expense or take any action hereunder.

**7. Environmental Laws.** (a) Except as set forth in Exhibit 7(a) hereto, Borrower has obtained all permits, licenses and other authorizations which are required under any now existing or hereafter enacted or amended federal, state or local statute, ordinance, code or regulation affecting or regulating the environment ("Environmental Laws") and, to the best of Borrower's knowledge, Borrower is in compliance in all material respects with all terms and conditions of the required permits, licenses and authorizations, and is also in compliance in all material respects with all other limitations, restrictions, conditions, standards, prohibitions, requirements, obligations, schedules and timetables contained in the Environmental Laws;

(b) Except as set forth in Exhibit 7(b) hereto, Borrower is not aware of, and has not received notice of, any past, present or future events, conditions, circumstances, activities, practices, incidents, actions or plans which may interfere with or prevent compliance or continued compliance in any material respect with Environmental Laws, or may give rise to any material common law or legal liability, or otherwise form the basis of any material claim, action, demand, suit, proceeding, hearing, study or investigation, based on or related to the manufacture, processing, distribution, use, treatment, storage, disposal, transport, or handling, or the emission, discharge, release or threatened release into the environment, of any pollutant, contaminant, chemical, or industrial, toxic or hazardous substance or waste; and

(c) Except as set forth in Exhibit 7(c) hereto, there is no civil, criminal or administrative action, suit, demand, claim hearing, notice or demand letter, notice of violation, investigation, or proceeding pending or threatened against Borrower, relating in any way to Environmental Laws; and

(d) Lender will not be deemed to assume any liability or obligation or duty to clean-up or dispose of wastes on or relating to the Property. Borrower agrees to remain fully liable and will indemnify, defend and hold Lender harmless from any and all costs, losses and expenses (including, without limitation attorney's fees) relating to any Environmental Laws or Borrower's breach of any of the foregoing representations or warranties. The provisions of this Item 7 will survive the release or satisfaction of this Mortgage or the foreclosure hereof.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any inspection specifying reasonable cause therefor related to Lender's interest in the Property. Additionally, Lender shall have the right to inspect the books and records of the operation of the Property and make copies thereof during normal business hours and upon notice to Borrower. Borrower shall keep its books and records in accordance with generally accepted accounting principles covering the operation of the Property, should the same be income-producing, Lender may in its discretion require Borrower to deliver to Lender within 90 days after the close of each of the Borrower's fiscal years an audited statement of condition and profit and loss statement for the Property for the preceding fiscal year, prepared and certified by a certified public accountant acceptable to Lender.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. No awards or settlements shall be accepted without Lender's prior written consent.

Lender is authorized to settle any claim, collect any award, and apply the net proceeds, after deducting all costs of collection including attorney's fees, at Lender's option, either to restoration or repair of the Property, or to the sums secured by this Mortgage, and if, in the sole discretion of Lender, Lender is not satisfied with the adequacy of collateral for any remaining indebtedness, Lender may without further demand or notice elect to declare the whole of the remaining indebtedness immediately due and payable and may invoke any of the remedies afforded it by law, and/or by this Mortgage, including those permitted by Item 17 hereof.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any installment payments referred to in Item 1 hereof or change the amount of such installments.

**10. Borrower Not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower approved by Lender shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor or refuse time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest.

**11. Forbearance By Lender Not A Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of, or preclude the exercise of, any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the Indebtedness, Future Advances and Obligations secured by this Mortgage.

**12. Remedies Cumulative.** All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage, the note evidencing the Indebtedness or any of the Loan Documents, or as afforded by law or equity and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements contained herein shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Borrower and Lender, subject to the provisions of Items 16 and 17 hereof. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the Items of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Mortgage shall be given by mailing such notice by certified or registered mail, return receipt requested, to Borrower at the address set forth above or as carried on the records of the Lender. Any notice to Lender shall be given by certified or registered mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein.

**15. Governing Law; Severability.** This transaction shall be governed by the laws of the State where the Property is located. In the event that any provision or clause of this Mortgage or the Loan Documents conflicts with applicable law, such conflict shall not affect other provisions of either this Mortgage or the Loan Documents which can be given effect without the conflicting provision, and in this regard, the provisions of this Mortgage and the Loan Documents are declared severable.

**16. Transfer of the Property and Interest Therein.** If all or any part of the Property or an interest therein is sold, transferred, encumbered or otherwise conveyed by Borrower, without Lender's prior written consent, or if any contract to do any of the same is entered into by Borrower without Lender's prior written consent, excluding a transfer by devise, descent or, by operation of law upon the death of a joint tenant, it shall be deemed to increase the Lender's risk and Lender may, at Lender's option, either declare all the sums secured by this Mortgage to be immediately due and payable, or may consent to said conveyance in writing and may increase the interest rate of Indebtedness and/or impose whatever conditions it may deem necessary to compensate it for the increased risk. Lender shall have waived such option to accelerate if, prior to the conveyance, Lender and the person to whom the Property is to be conveyed reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sum secured by this Mortgage shall be at such rate as Lender shall request, If Lender has waived the option to accelerate provided in Item 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender may, in its discretion, release Borrower from all obligations under this Mortgage and the Loan Documents, and any such decision to release or not to release Borrower shall be evidenced by said written assumption agreement.

If Borrower herein is other than an individual or individuals acting on their own behalf, any change in the legal or beneficial ownership of such Borrower or entity which changes the identity of any person or persons having, directly or indirectly, more than 10% of either the legal or beneficial ownership of either such Borrower, such entity, or of the Property, shall be deemed to be a transfer within the meaning of this Item. Such transfer shall not be made, created, or suffered to be made or created, without Lender's prior written consent.

**17. Acceleration; Remedies.** Upon the occurrence of an Event of Default (as defined in the Loan Documents) or a default in the payment of the Indebtedness, the Obligations or Future Advances hereby secured or any part thereof in accordance with the terms of this Mortgage, of the aforesaid Loan Documents or of any other document executed in conjunction with this Mortgage or the Loan Documents, or in the performance of any covenant or agreement of Borrower in this Mortgage or in the payment or performance of any document or instrument securing any Indebtedness or Obligation, or upon the filing of any lien or charge against the Property or any part thereof which is not removed to the satisfaction of Lender within a period of 30 days thereafter, the institution of any proceeding to enforce the lien or charge upon the Property or any part thereof, the filing of any proceeding by or against Borrower in bankruptcy, insolvency or similar proceedings, assignment by Borrower of its property for the benefit of its creditors, the placing of Borrower's property in receivership, trusteeship or conservatorship with or without action or suit in any Court, or the abandonment by Borrower of all or any part of the Property (herein "Events of Default"), then the Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without notice to the Borrower.

The sums secured hereby shall bear interest at the highest rate permitted to be charged on delinquent installments of principal and interest under the Loan Documents or the highest rate allowed by law, and this Mortgage shall become absolute and subject to foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, costs of documentary evidence, abstracts, title reports and reasonable attorney's fees.

**18. Borrower's Right to Redeem.** Borrower shall have such rights of redemption as are provided by the law of the State where the Property is located.

**19. Assignments of Rents.** Upon the occurrence of an Event of Default, the Lender shall have the right without notice and without regard to the adequacy of any security for the sums hereby secured and with or without the appointment of a receiver, to enter upon and take possession of the Property, and Lender may operate, manage, rent and lease the Property and collect any rents, issues, income and profits therefrom, the same being hereby absolutely assigned and transferred to and for the benefit and protection of Lender, contingent only upon the occurrence of an Event of Default. All rents collected by Lender may be applied to the cost of operation, maintenance and repair, and reasonable collection, management and attorney's fees, and then in reduction of any sums hereby secured in such other proportions as Lender may determine.

**20. Future Advances.** Upon request by Borrower, Lender, at Lender's option, may make Future Advances to Borrower. Such future and additional loan advances, with interest thereon, shall be secured by this Mortgage, when evidenced by promissory notes stating that such notes are secured hereby. At no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the original amount of the Indebtedness plus $0.

**21. Rental of Property Restricted.** Borrower shall not make, or suffer to be made, any lease of the Property or any part thereof, or any modification, extension or cancellation of any existing or future lease, without Lender's prior written consent. If, with Lender's written consent, there is a lease on the Property, Borrower is to perform all of Borrower's obligations under such lease or leases. Borrower is not to accept any prepayment of rent for more than one month in advance without Lender's prior written consent. Upon Lender's request from time to time, Borrower is to furnish Lender a statement, in affidavit form, in such reasonable detail as Lender may require, of all of the leases on the Property and, on demand, to furnish Lender executed counterparts of any and all such leases.

If Borrower shall enter into any lease agreement, written or oral, concerning the Property or any part thereof without having obtained Lender's prior written consent, Lender shall not be bound by, or obligated to perform under, any such lease in the event it exercises its remedies set forth in Item 19 or any other provision hereof.

**22. Release.** Upon payment of all Indebtedness, Obligations and Future Advances secured by this Mortgage, Lender shall discharge this Mortgage with any costs paid by Borrower.

**23. Mortgage as Security For Other Liabilities.** Where permissible by statute, this Mortgage shall serve as security for every other liability or liabilities of the Borrower to the Lender and any of its affiliates however created, direct or contingent, due or to become due, whether now or hereafter existing and whether the same may have been or shall be participated in, in whole or in part by others, by trust agreement or otherwise, or on any manner acquired by or accruing to the holder hereof, whether by agreement with, or by assignment or endorsement to the Lender by anyone whomsoever.

It is the express intent of the parties hereto that this Mortgage and the note or notes given contemporaneously herewith, and any extensions or renewals thereof, shall also evidence and secure any additional loan advances made after the delivery of this Mortgage to the recorder for record.

Notwithstanding the above, no debt or other liability, as described above shall be secured by the within Mortgage, if it shall hereafter be created in a "consumer credit transaction" as defined in Title 1, Consumer Credit Protection Act, 15 U.S.C.A., Sections 1601 et. seq., as amended, or any successor federal statute, or any applicable state statue containing substantially similar provisions.

**24. Uniform Commercial Code Security Agreement.** Borrower hereby grants Lender a security interest in all items included in the Property which can be subject to a security interest under the Uniform Commercial Code. Borrower will execute and deliver to Lender all financing statements and other documents requested by Lender to perfect its security in such property, and Borrower will pay the expense of filing such documents and of conducting a search of records in which documents are recorded. The covenants and agreements of Borrower throughout this Mortgage will apply to all items which are subject to the security interest granted herein. Upon the occurrence of any Event of Default under this Mortgage, Lender will have the remedies of a secured party under the Uniform Commercial Code and, at Lender's sole option, may also invoke the remedies provided in this Mortgage. In exercising any of such remedies, Lender may proceed against the items of real property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies in this Mortgage. This Mortgage may be filed with appropriate authorities as a Uniform Commercial Code Financing Statement.

**25. Flood Insurance.** If any part of any of the Property lies within a "special flood hazard area" as defined and specified by the United States Department of Housing and Urban Development pursuant to the Flood Disaster Protection Act of 1973 as now in effect; Borrower shall (i) promptly purchase and pay the premiums for flood insurance policies as Lender deems required so that Lender shall be deemed in compliance with the rules and regulations and provisions of the Flood Disaster Protection Act of 1973 as then in effect: and (ii) deliver such policies to Lender together with evidence satisfactory to Lender that the premiums therefor have been paid. Such policies of flood insurance shall be in a form satisfactory to Lender, shall name Lender as an insured thereunder, shall provide that losses thereunder be payable to Lender pursuant to such forms of loss payable clause as Lender may approve, shall be for an amount at least equal to the Indebtedness or the maximum limit of coverage made available with respect to any of the Property under the National Flood Insurance Act of 1968, as amended, whichever is less, and shall be noncancelable as to Lender except upon thirty (30) days prior written notice given by the insurer to Lender. Within thirty (30) days prior to the expiration date of each such flood insurance policy, Borrower shall deliver to Lender a renewal policy or endorsement together with evidence satisfactory to Lender that the premium therefor has been paid.

**26. Jury Waiver. UNLESS OTHERWISE PROHIBITED BY LAW, BORROWER WAIVES THE RIGHT TO TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS MORTGAGE OR THE TRANSACTION CONTEMPLATED HEREBY.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   _James A. Orlando II_____ (Seal)
                                   JAMES A. ORLANDO II

_____   _Nicole M Orlando_____ (Seal)
                                   NICOLE M. ORLANDO

                                   _____ (Seal)

                                   _____ (Seal)

STATE OF __Pennsylvania__, __Allegheny__ COUNTY

On this   18th DAY OF August, 2006,   before me, a Notary Public in and for said County and State, personally appeared

JAMES A ORLANDO II AND NICOLE M ORDLANDO, HUSBAND AND WIFE

the individual(s) who executed the foregoing instrument and acknowledged that   THEY   did examine and read the same and did sign the foregoing instrument, and that the same is   THEIR   free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:

(Seal)

NOTARIAL SEAL
LISA BRASKO
Notary Public
EDGEWOOD BOROUGH, ALLEGHENY COUNTY
My Commission Expires Oct 7, 2009

_____
Notary Public

This instrument was prepared by: FIFTH THIRD BANK (WESTERN PENNSYLVANIA
1850 EAST PARIS GRAND RAPIDS, MI 49546

CERTIFICATE OF RESIDENCE

I __MICHAEL MCCREADIE__ do hereby certify that the precise address of the within named mortgagee is FIFTH THIRD BANK, (WESTERN PENNSYLVANIA

Preparer's Signature: _____

MICHAEL MCCREADIE
1850 EAST PARIS
GRAND RAPIDS MI 49546

Form 3036 9/90   (page 5 of 5 pages)   PAM5 (02/06)

EXHIBIT A

All that certain property situated in the City of Pittsburgh 28th ward, in the County of Allegheny, Commonwealth of Pennsylvania , and being described as follows: 40-M-20. Being more fully described in a deed dated June 4, 2003 and recorded July 28, 2006, among the land records of the County and State set forth above, in Deed Volume 11721  and Page 225.

Permanent Parcel Number:   40-M-20
JAMES A. ORLANDO, II AND NICOLE M. ORLANDO



When recorded mail to:
*FIRST AMERICAN TITLE INSURANCE*
*LENDERS ADVANTAGE*
*1100 SUPERIOR AVENUE, SUITE 200*
*CLEVELAND, OHIO  44114*
*ATTN: FT1120*

# FIFTH THIRD BANK

## EQUITY Flexline℠ CREDIT AGREEMENT, SECURITY AGREEMENT and FEDERAL TRUTH IN LENDING INITIAL DISCLOSURE

JAMES A. ORLANDO II
NAME                                    Borrower

NICOLE M. ORLANDO
NAME                                    Borrower

Equity Flexline ACCOUNT NUMBER
Secured Line        [X]
Unsecured Line      [ ]

In consideration of the agreement by **FIFTH THIRD BANK (WESTERN PENNSYLVANIA**
(NAME OF LENDER)
(hereinafter referred to as the "Lender") to open a Equity Flexline Account ("Account") in the amount of $ 37,600.00 whereby you (includes all borrowers jointly and severally) may receive periodic extensions of credit (loan advances) in minimum amounts of $100.00 by writing a check or using an access card to draw an extension of credit on said Account, you hereby agree as follows:

**FINANCE CHARGE**
1. When you desire an extension of credit hereunder, you will use an Equity Flexline check or access card supplied by the Lender, or transfer funds from the Account by other means acceptable to Lender. The amount of the advance will be no less than $100.00, and no greater than the amount of credit available on your Account at that time. The Lender reserves the right to pay or refuse to pay any checks written for less than $100.00 and in the event Lender pays such an advance, you agree to pay a fee of $0.00. Upon Lender's request, you will surrender any Equity Flexline checks or access card in your possession.

2. All extensions of credit drawn on your Account, plus other charges and fees, insurance premiums, if applicable, and interest will be debited to your Account. You agree to pay back all such amounts as specified in paragraph 12.

3. You will promptly notify Lender in writing of any change of address, billing errors appearing on your monthly statement and of any loss or unauthorized use of your Equity Flexline checks or access card. Upon request of Lender, usually once a year, you agree to provide information on your current financial condition by completing a personal financial statement.

4. All payments will be credited promptly and in no event more than five days after receipt by Lender. Payments received prior to 2 p.m. at the Customer Service Department, 1850 EAST PARIS GRAND RAPIDS, MI 49546
will be credited to the account on that business day.          (Address)

5. Lender reserves the right to refuse to honor any request for advance on your Account which do not conform to the requirements of this Agreement. Lender may also refuse to honor a request for advance on your Account if to do so would cause the balance of your Account, according to Lender records, to exceed your credit limit in effect at that time. However, Lender at its discretion may honor such check or card advance, despite the fact it would cause your Account balance to exceed your credit limit. Should Lender so honor such a request which causes the Account balance to exceed your credit limit, such excess shall be unsecured.

6. A **FINANCE CHARGE** will be imposed from the date of posting of each advance on the daily balance of the Equity Flexline account until payment in full is entered to your Account.

7. We calculate the **FINANCE CHARGE** on your Account by applying the **ANNUAL PERCENTAGE RATE**, figured on a daily basis, times the daily balance of your Account. To get the daily beginning balance of your Account each day, we add new advances, and subtract any payments or credits and unpaid finance charges. The **FINANCE CHARGE** during each billing cycle will be the sum of the daily **FINANCE CHARGES** so calculated. The **ANNUAL PERCENTAGE RATE** corresponding to the periodic rate does not include any costs other than interest.

8. The ANNUAL PERCENTAGE RATE of your Equity Flexline Account will be a monthly variable rate expressed as the daily periodic rate equal to 1/365 of an annual rate of 0.00 plus the "Index Rate". The Daily Periodic Rate of FINANCE CHARGE may increase if the highest prime rate published in the Wall Street Journal Eastern Edition "Money Rates" table (the "Index Rate") increases. The initial Daily Periodic Rate of FINANCE CHARGE is +0.022 which corresponds to an initial ANNUAL PERCENTAGE RATE of 8.250 %. The maximum interest rate will not exceed 25% /per annum or the highest rate allowed by law, whichever is less. The new rate will be reflected on your periodic statements. Any increase in Daily Periodic Rate may increase your minimum monthly payments.

9. If the **FINANCE CHARGE** so computed is less than $.50 for a billing cycle, a minimum **FINANCE CHARGE** of $.50 may be charged.

10. **INITIAL Equity Line RATE:** The current **ANNUAL PERCENTAGE RATE** for this account is 8.250 %. The corresponding daily periodic rate is +0.022%. This rate is subject to change monthly as specified above.

11. **FIXED RATE LOCK OPTION:** You may opt to convert any amount of the outstanding balance into a fixed rate "lock", for a term not to exceed the established maturity date of the Equity Flexline Credit Agreement. The minimum term is 36 months, with a minimum locked loan amount of $3000.00. The loan fee for each fixed rate "lock" is $0.00. You may have up to 3 locks outstanding at any one time. The fixed rate for the lock will be based on the Prime Rate, plus the margin. With the establishment of each lock, the payment amount required to pay off the balance of the lock in equal payments over the remaining term of the loan at the fixed rate applicable to that lock will be determined. Your minimum payment due each month will be the sum of the fixed payment amount for each lock plus the minimum payment amount for the balance of your Equity Flexline Account which has not been designated as a lock. Any payment made upon your outstanding principal blance in any lock will be available on the Equity Flexline Account for you to draw against upon the posting of such payment. As used herein, (a) "lock" means the conversion of a portion of the outstanding balance on your Equity FlexLine to a fixed rate, fixed term loan, and (b) "margin" means the difference between the most favorable Fifth Third fixed Home Equity loan rate of interest in effect at the time the lock request is made and the Prime Rate.

**PAYMENTS AND FEES**
12. **MINIMUM PAYMENT REQUIREMENTS:** Your payments will be due monthly and will equal the finance charges that accrued on the outstanding balance during the preceding billing period. Making the minimum payment will not reduce your principal balance.
This account will mature 20 years from the date of this Agreement. At that time, you will be required to pay the entire balance in a single "balloon" payment. You may apply to refinance that balance with Lender.

13. **IRREGULAR PAYMENTS:** Lender can accept late payments or partial payments, or checks or money orders marked "payment in full" or language to the same effect, without losing any rights under this agreement.

14. **ANNUAL CHARGE:** An annual charge of $50.00 will be assessed at the time the Account is opened, and, except in Maryland, on that day each year thereafter, for use of the Account and associated services. This fee is non-refundable.

15. **RETURNED CHECKS AND STOP PAYMENTS:** If a payment check is returned for any reason, Lender may charge your Account a fee of $20.00 . If you request that Lender stop payment on your check, Lender may charge your Account a fee of $0.00.

16. **LATE CHARGE:** If the minimum payment due is not received within 15 days after the billing date, Lender may levy a late charge per month of 10% OF THE PAYMENT AMOUNT WITH A MINIMUM OF $20.00.
If so incurred, each fee will be identified as a separate loan transaction on the next billing statement.

17. **HAZARD INSURANCE:** Borrower shall keep the improvements now existing or hereafter erected on the real estate which secures this Account insured against loss from fire, all hazards included within the term "extended coverage", and such other hazards as Lender may require or as may be required by applicable law (including flood insurance) and in such amounts and for such periods as Lender may require.

18. Termination Fee: Not applicable

19. **OVERLIMIT FEE:** You agree not to incur credit on your account in excess of the amount specifically authorized by Lender.
In the event the balance on your account exceeds the established credit limit at any time, Lender may levy
AN OVERLIMIT CHARGE OF $10.00 FOR EACH SUCH OCCURRENCE

**20. DEFAULT:** You will be in default of this Agreement upon your failure to abide by any of the terms of this Agreement and any documentation executed to provide Lender security for your Account.

**EVENTS OF DEFAULT:** In addition, the Lender may terminate the plan and accelerate the balance if any of the following circumstances occur:
  a) There has been fraud or material misrepresentation by you in connection with this Account.
  b) You fail to meet the repayment terms.
  c) Your actions or inactions have adversely affected the Lender's security interest in the Account.
  d) You transfer title to the real estate which secures this account or sell the real estate without permission of the Lender.
  e) You fail to maintain the required insurance on the real estate AND ANY IMPROVEMENTS THEREON.
  f) You fail to pay taxes on the real estate
  g) Some other action causes a lien senior to that held by the Lender to be placed on the real estate.
  h) Your death.
  i) The real estate is taken through eminent domain.
  j) Foreclosure by a lienholder.
  k) Any other circumstances which adversely affect the Lender's security.

**IN THE EVENT OF DEFAULT, BORROWER AGREES THAT LENDER MAY, WITHOUT NOTICE AND WHERE APPLICABLE LAW ALLOWS, INCREASE THE ANNUAL PERCENTAGE RATE BY 6% , OR TO THE HIGHEST RATE ALLOWED BY LAW, WHICHEVER IS LESS.**

**21.** The Lender may temporarily prohibit additional extensions of credit or reduce the credit limit if any of the following circumstances occur:
  a) The value of the real estate that secures the Account significantly declines below the appraised value of the real estate.
  b) The Lender reasonably believes that you will be unable to fulfill the repayment obligations under the Account due to a material change in your financial circumstances.
  c) You are in default of any material obligations under the Agreement.
  d) Action by a governmental body precludes the Lender from imposing the agreed upon ANNUAL PERCENTAGE RATE.
  e) Action by a governmental body adversely affects the priority of the Lender's security interest to the extent that the value of the security interest is less than 120 percent of the amount of the credit line (for example, through imposition of a tax lien).
  f) During any period in which the ANNUAL PERCENTAGE RATE corresponding to the periodic rate reaches the maximum rate allowed under the plan.
  g) When a regulatory agency with responsibility for supervising the Lender provides notification that continuing to advance funds may constitute an unsafe and unsound practice.
  h) When any of you file any form of bankruptcy.
  I) WHEN YOU REQUEST THAT LENDER DISCONTINUE MAKING FURTHER EXTENSIONS OF CREDIT.

**22.** Unless prohibited by law, Borrower shall pay all expenses, including attorneys' fees, reasonably incurred by the Lender with respect to collection of the indebtedness evidenced hereby or enforcement of the Lender's rights hereunder (including foreclosure, suit for a deficiency judgement or other litigation expenses and also including such costs and    attorneys' fees as may be incurred on appeal), arising out of any default by Borrower.

**23.** Borrower agrees that if Lender is sued or otherwise directed to respond to any civil, criminal or administrative demand relating to the loan evidenced hereby (including but not limited to, the amount due, any collateral, or the underlying transaction) Borrower will pay Lender, upon request, an administrative fee of $28 per hour and $.25 per copy to comply with such demand. Borrower also agrees that any amount not paid within fifteen days of Lender's request may be added to the principal amount of the remaining indebtedness subject to the rate of interest on the Note until paid.

**24.** You should consult a tax advisor regarding the deductibility of interest and charges on your Equity *Flex*Line.

**25.** All persons signing this Agreement shall be obligated on the Account and shall be jointly and severally liable for all amounts due and owing on the Account. You hereby authorize Lender to pay any request for advance whether by Equity *Flex*Line check or access card, unless any one of you specifically instructs Lender otherwise in writing.

**26.** As used herein, the singular shall include the plural and the plural shall include the singular.

**27.** To secure your Equity *Flex*Line, you are giving Lender a security interest in your deposit accounts with the Lender and its affiliates and subsidiaries and:
1319 BARR AVENUE PITTSBURGH, PA 152050000

**28.** This Agreement and the amounts contracted for, including the FINANCE CHARGE, shall be governed by, and construed and interpreted in accordance with, the laws of the State of PA              , without regard to its conflict of laws principles, and applicable federal laws and regulations, and the obligations, rights and remedies of the parties shall be determined in accordance with such laws.

**29.** You hereby acknowledge that prior to signing this Agreement, you have received and read the Federal Truth-in-Lending Disclosure Statement for this Account contained herein.

**30.** For Equity *Flex*Lines that are not secured by your dwelling, Lender may terminate the Account and accelerate the balance for any of the reasons as set forth in paragraphs 20 AND 21.

**31. FOR TENNESSEE RESIDENTS ONLY.** You have a right to reduce the limit on the maximum amount of principal indebtedness to be secured under the deed of trust securing this credit agreement to an amount not less than the amount of principal indebtedness shown on the most recent statement of your account received by you from the Lender, plus the amount of any advances initiated by you subsequent to that statement. In order to effectuate such a reduction, you must serve a notice of limitation on the Lender and, on or before the effective date of the notice, file a copy thereof for recordation in the appropriate Register of Deed' office as an amendment to the deed of trust. The notice must name the Lender on whom the notice is served, state specifically the reduced credit limit, state the effective date of such limitation (which date cannot be sooner than (1) regular business day after the date of the service of the notice), name all parties to this open-end credit agreement and the deed of trust securing the same, identify with reasonable specificity the real property subject to the deed of trust, give and account number assigned to the account created by this open-end credit agreement and be signed by all persons principally obligated to repay advances under this open-end credit agreement. Upon notice from the Lender, you have a duty to return checks, credit cards, or other devices to obtain further advances under this open-end credit agreement upon the service by you of a notice of limitation.

Borrower acknowledges receipt of a completed copy of this agreement at the time of signing.

DATE: 08/18/06

ACCEPTED: FIFTH THIRD BANK (WESTERN PENNSYLVANIA)
(Name of Lender)

By: _____

Borrower: James Orlando

Borrower: Nicole Orlando

COPY1 - LENDER    COPY2 - CUSTOMER

PA    ELC1 (02/04)

## DISCLOSURE CONCERNING YOUR BILLING RIGHTS

YOUR BILLING RIGHTS, KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
* Your name and account number
* The dollar amount of the suspected error
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50.00 of the questioned amount even if your bill was correct.
Credit Reporting:
If you believe information we report about the credit history on your account(s) is incomplete, inaccurate or outdated, you must provide us with clear written documentation including the name on the account, the account number and the nature of the disputed information.
Please write to us at FIFTH THIRD BANK, 38 Fountain Square Plaza, Post Office Box 639090, Cincinnati, OH 45263-9090.

PA            ELC2 (05/05)